cided, I have consulted Associate Justice Davis, and he fully agrees with me in the views above expressed.

[For other cases involving this patent, see note to Hodge v. North Missouri & I. M. R. Co., Case No. 6,561.]

## Case No. 17,958.

### WOOD v. MORTON.

[See Case No. 17,962.]

## Case No. 17,959.

### WOOD et al. v. The NIMROD.

[Gilp. 83.] [1]

District Court, E. D. Pennsylvania.   May 2, 1829.

SHIPPING ARTICLES — CONSTRUCTION — PORTS OF CALL—FORFEITURE OF SEAMAN'S WAGES—ABSENCE—CONFINEMENT FOR MISBEHAVIOR.

1. Where shipping articles authorise the master to touch at certain intermediate ports, "or as he may direct," it is no violation of his contract with the seamen to stop at a place not named. and affords no justification to them for leaving the vessel.

[Cited in The Moslem, Case No. 9,875; Magee v. The Moss, Id. 8,944.]

2. To justify the forfeiture of a seaman's wages for absence, under the provisions of the act of 20th July, 1790 [1 Stat. 131], it is indispensable that there be an entry in the log book of the fact, of the name of the seaman, and of his having gone without leave.

[Cited in The John Martin, Case No. 7,357.]

3. Where a seaman is appointed to act as mate of a vessel, by the master, during the voyage, he may be removed by the master for incompetency, and is not entitled to any other wages than those originally contracted for.

4. Where a seaman is imprisoned for misbehaviour, he does not forfeit the wages accruing during his confinement.

[Cited in The David Pratt, Case No. 3,597.]

HOPKINSON, District Judge. The libellants, [Thomas A.] Wood and [John] Riggins, in this case, shipped on the 5th October last, at New York, on board the brig Nimrod, to perform a voyage, as mariners, from the said port of New York to Darien; thence to St. Thomas; thence to New Orleans, or as the master might direct; and back to New York, her port of discharge, at the wages of ten dollars per month. The brig sailed from New York, proceeded to Darien, went from thence to St. Thomas, thence to Maricaibo, and from Maricaibo sailed for Philadelphia, not going at all to New Orleans, and arrived at this port on the 5th April, 1829. The brig at Maricaibo took in a cargo for Philadelphia, intending, as the mate swears, to proceed to New York after landing that cargo. On the arrival of the vessel at this port the libellants left her, alleging that their contract was broken by the master by bringing the brig here. They

have now sued for the wages up to the 5th April, the time of their arrival here.

On the part of the owners of the brig this claim is resisted, on the ground that the libellants, by deserting the vessel before the termination of the voyage, have severally forfeited their wages. Whether this contract was broken and terminated, or not, by coming to Philadelphia, depends upon the meaning and construction of the shipping articles. The voyage of the contract is there described to be from New York to Darien, thence to St. Thomas, and thence to New Orleans, or "as the master may direct," and back to New York. The brig went from St. Thomas to Maricaibo, omitted New Orleans altogether, and sailed from Maricaibo for Philadelphia with a cargo, intending afterwards to proceed on to New York. The libellants contend that the captain [Neal], having substituted Maricaibo for New Orleans, was then bound to return directly to New York, and that his coming to Philadelphia was a violation of the contract, which discharged them from their obligations under it. The phrase is not to New Orleans, "and" as the master may direct, but "or"; it was not therefore compulsory on the master to go to New Orleans; and he did not. But was he restricted to one other port in the place of New Orleans, if he should not choose to go there? The contract does not say so. At St. Thomas the future prosecution of the voyage is left, under just and reasonable limitations, much to the discretion of the master; and there probably was good reason for doing so   We must give the terms of the contract their natural and obvious meaning, neither restraining them unreasonably, nor taking a latitude oppressive and unjust. At St. Thomas this brig is to be under the direction of the master; the libellants are to go with her to New Orleans, or "as the master may direct" them to go; and not to such other port as he shall direct. The terms are as broad as if it had been "or elsewhere." Under a phrase so broad, how can the libellants claim to limit the power given by it to the going to Maricaibo? Under the decisions that have been made on the meaning of "elsewhere," we will take care that these general expressions shall not have a construction obviously extravagant, unjust and impolitic, as was attempted in some of the cases that may be cited. Surely the respondent in this case does not ask for any such latitude, or unreasonable use of the liberty given to him in the contract. It is agreed that he might go to some other place than New Orleans; and there is no complaint of the substitution of Maricaibo. What further has been done by the master, under his power to proceed from St. Thomas as he might choose to direct? From Maricaibo, instead of sailing directly for New York, he stopped at Philadelphia to discharge a cargo taken in for that port; this would have been done in a few days, and the brig would have pur-

---

[1] [Reported by Henry D. Gilpin, Esq.]